Powers v. Woolfolk.

---

JOHN POWERS, Respondent, v. J. L. WOOLFOLK, Appellant.

Kansas City Court of Appeals, June 29, 1908.

1. **BANKS AND BANKING: Powers of Cashier: Notes as Collateral: Private Banks: Statute.** A cashier having general charge and management of a bank has authority to transfer the bank's paper as collateral security for the bank's debts; but under the statute there should be an order of the board of directors to that effect, but such statute has no application to a private bank, but an incorporated one.

2. ———: **Notes as Collateral: Owner: Evidence.** A bank owed plaintiff a certificate of deposit which it took up by giving therefor one of its notes signed by its cashier and others and endorsed by its owners, and subsequently put up other notes as security upon the failure of one of the makers of the first note. *Held,* the transaction was not securing the note of its cashier but its own debt and note.

3. ———: ———: ———: **Consideration.** The giving of the latter note as collateral for the first note did not need a consideration since the debt was the debt of the bank and the handing of the collateral over to the plaintiff was an executed matter and sufficient and no one can complain unless it be the creditors.

4. ———: ———: ———: ———: **Forbearance.** Forbearance is sufficient consideration for such collateral.

5. ———: ———: ———: ———: ———: **Principal and Surety.** Where parties, whether principal or surety, make a note in order to secure an extension of payment of a debt, the surety is never discharged.

6. ———: ———: **Exchanges: Consideration.** There is no law to prevent the holder of a note from taking new collateral security in lieu of those surrendered the exchange being sufficient consideration.

7. ———: Bills and Notes: Payment: Statute: Place of Payment. The maker of a note left his check at the bank after banking hours with the teller, directing him to pay it on the note which was not produced but was in the possession of plaintiff as collateral security. *Held*, the payor of a negotiable note is not protected by paying to the payee who has sold and endorsed to another; and the statute protecting the payor of non-negotiable notes without notice of transfer does not apply to a negotiable note; nor does the fact that the note was paid at the bank alter the case.

8. ———: ———: ———: Authority to Collect: Evidence. *Held*, the evidence fails to show the cashier had plaintiff's authority to collect the note in suit.

9. ———: ———: Counterclaim: Defense. Some days later plaintiff drew a draft on the bank which went to protest by reason of the failure of the bank. *Held*, this matter could not be set up as a defense by way of counterclaim unless the bank was the owner of the note, since no defense to a note can be set up except such as arises out of the note itself or adheres in it.

10. ———: ———: Defense: Equity. The fact that the plaintiff held a subordinate position as clerk in the bank does not effect the matters above decided.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

AFFIRMED.

*Fyke & Snider* for appellant.

(1)   The court erred in overruling appellant's objection to the introduction in evidence of the note sued on.   There is no evidence in the record that Casey had authority to assign the note to respondent.   Lee v. Smith, 84 Mo. 304; Tennessee v. Davis, 50 How. Pr. (N. Y.) 447; Bank v. Parmalee, 95 U. S. 557; Bank v. Bank, 66 Fed. 691; Matt. vi, 24.   (2)   For the same reason the court erred in refusing appellant's instruction number 4.   (3)   If at the time the one thousand dollars was paid, the note was in possession of the bank, or if the bank or Casey had authority from respondent to receive payment of the note, a payment to the bank or Casey would be a good payment.

*C. C. Dickinson, Peyton A. Parks* and *Paxton & Rose* for respondent.

(1) T. M. Casey, as cashier, had authority to put up the bank's paper as collateral to secure loans made to the bank. Bank v. Hughes, 62 Mo. App. 581; Sloan v. Bank, 158 Mo. 431. (2) Casey was not only cashier, but general manager of the bank, in full control. (3) Powers was about to take his money out of the bank, and hence his letting it remain there was a valuable consideration for the giving to him of the note signed by G. M. Casey, G. Y. Salmon and T. M. Casey, payable on demand. Afterwards G. M. Casey failed, and again Powers was demanding his money, and his still letting the bank retain it was a good consideration for the transfer to him of the collateral notes, and the giving up of certain collateral notes was a good consideration for the substitution of others in their place. Cox v. Sloan, 158 Mo. 411; Finch v. Skilton, 79 Hun (N. Y.), 551; Thomas v. Croft, 2 Rich. L. (S. C.), 113, 44 Am. Dec. 279; Bullard v. Burton, 64 Vt. 387; Deer v. Marsden, 88 Mo. 512; Chiles v. Wallace, 83 Mo. 85. (4) The Woolfolk note, being negotiable paper and whether due or not due, was subject only to such equities and set-offs as grew out of the note itself, not to independent set-offs or counterclaims against the assignor, subsequent to the assignment. Barnes v. Mullins, 78 Mo. 260, Crawford v. Johnson, 87 Mo. App. 479; Knaus v. Givens, 110 Mo. 58; Kelly v. Stead, 136 Mo. 430. (5) Powers was a holder of the Woolfolk note for value, and entitled to protection. Bank v. Abernathy, 32 Mo. App. 211. (6) When defendant made the $1,000 payment without requiring the production of the note, he did so at his peril, and must bear the loss. Bates v. Martin, 3 Mo. 367. (7) It is a familiar maxim of the law that when one of two innocent parties must suffer, it must be the one who has been guilty of a want of care. Powers was not at

fault in anything; Woolfolk was grossly careless in paying the $1,000 without the production of the note.

ELLISON, J.—Plaintiff's action is based on a negotiable promissory note for fifteen hundred dollars. He obtained judgment in the trial court, less $132, which was allowed by that court as a credit, the circumstances of which we need not state since plaintiff is not complaining.

There was a private banking house in Clinton, Missouri, known under the name of Salmon & Salmon, which did a general banking business. The bank was practically under the exclusive management and control of T. M. Casey, who was its cashier. The plaintiff made a time deposit with the bank of $10,000 at five per cent interest and as evidence thereof received a certificate of deposit. He afterwards concluded he could get a higher rate of interest by loaning the money to individual borrowers and so expressed himself to Casey. The latter told him that the bank could not pay a higher rate, but that he would get him a note payable on demand for the amount and accrued interest, being $11,100, bearing seven per cent, signed by his father, G. M. Casey, himself and one of the Salmons, payable to Salmon & Salmon and by them endorsed to plaintiff, notice and protest waived. This was satisfactory to plaintiff.

Afterwards G. M. Casey became known to be insolvent and failed in business, and plaintiff began to demand payment of his note from T. M. Casey, who, as already stated, was manager of the bank and who had also signed the note individually. The latter stated to plaintiff that if he would not press for payment he would turn over to him notes of the bank as collateral so as to make the note as good as it was before G. M. Casey's failure. This was done and these collateral notes were endorsed by the bank, through T. M. Casey,

to plaintiff, who put them in his private box along with the principal note. This box was kept locked by plaintiff and placed by him in the bank's vault. Afterwards T. M. Casey said to plaintiff that the collateral notes would be falling due from time to time and that he would like for plaintiff to let him have them when payment would be offered and that he would give him other collateral in their place. Plaintiff had no objection to this, provided the substituted collateral was satisfactory to him. In pursuance of this several substitutions were made, plaintiff putting the new ones in his box.

In January, 1905, defendant gave the note in suit to the bank, for $1,500. In April thereafter Casey gave to plaintiff this note (endorsed by him for the bank) as collateral to be substituted for some then received from plaintiff. Plaintiff took the note and placed it in his box. Afterwards, on June 10, 1905, after banking hours, defendant having a check on the bank for $1,000 and not knowing that his note had been transferred to plaintiff, went into the bank and said to the paying and receiving teller "I want to pay you $1,000 on that note of mine. Get the note." The teller replied that it was locked up. Defendant then stated to him that he was going away and that "I want to leave this check with you to pay on that note." The teller then made a memorandum to that effect. It was stated that Casey heard this conversation and we will assume that he did. A few days thereafter, on the 21st of June, 1905, the bank failed and its doors were closed.

1.   The first question is did T. M. Casey as general manager and cashier of the bank have authority to transfer the note in controversy to the plaintiff as collateral security for the note of eleven thousand and one hundred dollars held by plaintiff. The law is well settled that a cashier having the general charge and

management of a bank has authority to transfer the bank's paper as collateral security for the bank's debts. [Sloan v. Bank, 158 Mo. 431, 438, 439; Bank v. Hughes, 62 Mo. App. 581, 582.]

Conceding this statement of the law, defendant makes two distinct claims in avoidance. The first is that the transfer of the note against defendant to the plaintiff by Casey as collateral, though in the name of the bank, was merely an attempt to transfer the bank's note as security for his private debt. The statement that the principal note was T. M. Casey's is true, yet it is not the whole truth. The note was payable to the bank and it was signed by T. M. Casey's father and one of the Salmons and by T. M. Casey himself. It was thus, on its face, a note belonging to the bank and the bank substituted it for the certificate of deposit it had given to plaintiff. In other words, the bank took up its certificate of deposit and gave in place thereof one of its notes; afterwards assigning other notes as collateral. While this was securing a note of which T. M. Casey was one of the makers, yet it was not done for him. It was done by the bank through him and for the bank. The transaction was that of the bank, and for the bank, in order to take up the certificate of deposit issued and owing by the bank.

2. The second claim is that as plaintiff did not take collateral security at the time he accepted the note in place of the certificate of deposit, though he took it afterwards, he is not a holder of such collateral for value. That is, it is said there was no consideration for the transfer of the note to plaintiff. But considering the new note as, in reality, that of the bank although signed by others, the matter under discussion does not present the question of a consideration. It does not present the question of a promise to do a thing —it is a thing done and the question of consideration for a promise cuts no figure. A man may promise to

make a gift and it cannot be enforced for lack of consideration; but if he actually makes the gift it is valid. So it ought to be clear that where a debtor, with or without request, voluntarily gives the creditor collateral securities after the indebtedness has been incurred, and the latter accepts them, the transaction is valid between them. It is commonly done and its legality, we think, has not been questioned. Therefore, while it is true plaintiff did not take the collateral at the time he surrendered the certificate and took the note in its place, he had a right to accept and hold whatever securities the bank afterwards should choose to let him have, and no one (except it be creditors) has a right to complain.

3.    We may look at the case from another standpoint. The law is that a promise of forbearance, though for an indefinite time, if a reasonable time be given, is a promise on a consideration and binds secondary or additional obligors. [Ballard v. Burton, 64 Vt. 387; Finch v. Skilton, 29 Hun 925; Bank v. Parker, 130 N. Y. 415; Howe v. Taggart, 133 Mass. 284; Robinson v. Gould, 11 Cush. 55; Moore v. McKenney, 83 Me. 80; Calkins v. Chandler, 36 Mich. 319.] Therefore, viewing the matter from the standpoint of the interest or rights of the makers of the note for $11,100, and conceding that something did transpire between plaintiff and the bank and the makers of that note which needed a consideration to support the transfer of the collaterals, such consideration was had in plaintiff's forbearance.

The well-settled rule of law in this State that a surety will be discharged if there is an extension of time without his consent, for a definite period, based on a consideration, is not opposed to what we have written. That rule is founded upon equitable principles in favor of the surety and the reason for it does not apply as between the payee and the principal debtor.

Neither does what we have written run counter to that rule though the rights of sureties are involved.　For, in all that took place in this case, the assent of the new obligors (whether they be regarded in the light of sureties or not) to the extension of time was had, as it was for that purpose they gave their note, and where that is the case, the surety is never discharged.

4.　As the matter is dwelt upon in the statement for either party, we will say that there was no reason in law to prevent plaintiff from taking new collateral from the bank from time to time in place of that he would then surrender.　His surrender of collateral theretofore received was, itself, a valid consideration.

5.　Under the foregoing views plaintiff was the owner of the note in suit and we have now to consider whether defendant made a payment thereon of $1,000 as he contends.　We have already seen that defendant put that sum in the bank with directions to the teller, and we may concede to Casey also, to credit it on his note.　The note was not produced.　Neither the bank, nor the teller, nor Casey had it in possession.　It had been assigned to plaintiff and was in his possession by being locked in his box.　It being a negotiable note, payable to order, though past due, it was defendant's duty to demand its production by the bank, as payee, before making the payment.　The payor of a negotiable note, though he does not know of its transfer, is not protected by paying to the payee who has sold and endorsed it to another.　The statute (section 4488, Revised Statutes 1899) protects the payment of a nonnegotiable note to the payee if he has no notice of its being transferred, but that statute does not apply to negotiable paper, even though it be past due.　Before that statute was enacted, even the payment of a nonnegotiable note to the payee after it had been assigned and was not in the latter's possession, was not a discharge of the note, though the payment was made

without notice.    It being held to be the duty of the payor to "look after his note and to know that he pays his money to whom it is due."    [Bates v. Martin, 3 Mo. 367.]

6.    But it is insisted that this note, as shown upon its face, was payable at the bank.    That however can make no difference.    That was a mere place of payment and did not affect defendant's duty to see that the bank had it in possession before making the payment.

7.    It is also insisted that Casey had authority from plaintiff to collect the collateral.    The evidence fails to support this.    Casey got collateral from plaintiff on the statement that debtors wanted to pay.    But he did not get it to collect for plaintiff.    Plaintiff surrendered all interest in it on other collateral being substituted in its place.

8.    It seems that a few days after defendant left the money in the bank to be paid on his note, he purchased a draft for $500.    The closing of the bank shortly after caused refusal of payment and it was returned to defendant.    He thereby lost that sum and claims now that it should be set off against the note in suit.    That could only be done on the theory that the bank, instead of plaintiff, owned it.    What we have written disposes of the point.    In this State there can be no set off or counterclaim, nor any other defense, to a note, except such as arise out of the note itself, or adhere in it.    [Barnes v. McMullins, 78 Mo. 260.]

9.    Defendant insists in a supplemental brief that whatever authority a cashier may have formerly had to transfer notes of the bank as collateral security, such power was taken from him by the statute.    [Sec. 1294, R. S. 1899.]    That statute does deny a cashier such power unless "such power and authority shall have been given him by the board of directors in a regular

meeting of the board;" and that without such action by the directors the cashier's attempted transfer is declared to be "null and void." [Vanstandt v. Hobbs, 84 Mo. App. 628.]

It is furthermore true that section 1301 of that statute makes the provisions of the act applicable to private banks, such as this, "so far as the same are applicable." It is clear that in respect to the power of a cashier of a private bank, here considered, the statute is not applicable. The statute can only apply to such banks as have a board of directors. The terms of the statute, by direct implication, preclude its application to a private bank not so organized.

10. We have not overlooked that it appeared that plaintiff held the subordinate position of clerk in the bank. But we do not see how that fact can affect any of the questions we have discussed. The judgment will be affirmed. All concur.