### MAMMOTH VEIN COAL COMPANY *v.* BISHOP.

#### Opinion delivered July 6, 1914.

1. BILLS AND NOTES—PAYMENT TO ORIGINAL PAYEE—RIGHTS OF ASSIGNEE. —A payment by the maker of a negotiable note to the original payee after the note has been assigned, although the assignment occurred after maturity, is not a good defense to an action by the assignee against the maker. (Page 588.)

2. BILLS AND NOTES—PAYMENT TO BANK—RIGHTS OF HOLDER.—Payment to a bank of the amount due on a note made payable there, when the bank does not have possession of the note, or authority to collect it, does not discharge the maker. (Page 589.)

3. BILLS AND NOTES—TRANSFER AFTER MATURITY—NEGOTIABILITY.—The assignee of a negotiable note, assigned after maturity, has the right to collect the note, subject only to defenses existing at the time of the transfer. (Page 589.)

Appeal from Sebastian Circuit Court, Greenwood District; *Daniel Hon,* Judge; reversed.

STATEMENT BY THE COURT.

This suit was brought by appellant against R. A. Bishop to collect a negotiable promissory note for $600 made to the Bank of Midland on May 3, 1912. The maker of the note denied that the appellant company was the owner thereof, and also plead payment.

It appears from the testimony that the Mammoth Vein Coal Company, appellant, did business with and kept money on deposit in the Bank of Midland, and had

on July 29, 1912, three or four thousand dollars in that bank. On the 29th of July the auditor of the appellant company, having heard that the bank was not in good condition and had failed to pay some of its checks, went to the bank to withdraw or collect the coal company's deposit. He found the bank open and in charge of a young man, of whom he asked payment, and who told him the bank did not have the money to pay with. The auditor then requested that he turn over notes and securities owned by the bank in payment of the deposit of the Mammoth Vein Coal Company, and was shown some notes held by the bank, among others the note of R. A. Bishop, appellee, to the Bank of Midland, upon which this suit is brought. The young man was without authority to turn over any of the notes and securities in payment, and referred him to the cashier, Cunningham, who was ill at his home. The auditor then called to see the cashier of the bank and was told to go back to the bank and get what notes he desired in payment, and he returned, and, upon giving the message from the cashier to the man in charge, the note sued on, among others, was delivered to him. He did not give a receipt for the note and it was not endorsed at the time. The next morning he had an interview with the president of the bank on the subject, who then endorsed this note with the others in blank, "Bank of Midland, by I. H. Cunningham, President." This note was received by the coal company at its face value in payment of that much of its deposit due from the Bank of Midland. The auditor stated that the endorsement was made on July 30, in the town of Midland during banking hours, the note being at the time past due.

Appellee admitted that he executed the note sued on, and that R. E. McEachin came to him and asked if it would be satisfactory for him to take up the note at the bank and let Bishop make him a new note therefor. "I told him that it would be satisfactory to me, but that I would want my note. He said that the bank needed the money, and he had some money and that such an ar-

rangement was satisfactory to him, and he thought would be to the bank.'' Some time after that (August 6), the next time he came to town, he signed the note to R. A. McEachin, who told him that Mr. Cunningham did not have the old note, but that he would get it and deliver it to him, and gave him the bank's receipt of payment therefor. He did not know where the note sued on was at that time, and a short time after he signed the new note he was notified by the coal company that it held the note. He afterward paid McEachin on the new note $300 and refused to pay the balance because he had been notified that the coal company claimed to own the old note.

McEachin stated that he went to Bishop and asked how it would suit him to pay the note to the bank and let Bishop execute him a new note for $600. That this was agreeable to Bishop, and he went to the bank and gave Cunningham, the president, his wife's check for the amount due on the Bishop note, herein sued on. Cunningham told him that the note was not in the bank, but in Fort Smith, and he would get it and turn it over to him, and gave him the following receipt, stating at the time that the note had not been endorsed in any way.

"August 6, 1912.

"Received of R. A. McEachin, six hundred dollars ($600) in full payment of R. A. Bishop note.

(Signed)    "Bank of Midland, Arkansas.

"By I. H. Cunningham.''

McEachin turned the receipt over to Bishop and took his note for $600 on the 6th day of August.

Appellant asked the court to direct a verdict in its favor, which the court refused to do. The jury found a verdict in Bishop's favor, and from the judgment thereon this appeal comes.

*James B. McDonough,* for appellant.

1. The court should have directed a verdict for the appellant on the pleadings alone. The answer admits the execution of the note, and, in failing to deny the assignment thereof for a valuable consideration, admits

the assignment. Kirby's Dig., § 517. It was not sworn to. It does not allege that the note was paid to the Bank of Midland while the bank was in possession of and owner of the note. It therefore stated no defense. 21 Ark. 393.

In any event, appellant was entitled to an instructed verdict upon the undisputed testimony. If the note was past due, that fact did not detract from the right of the Bank of Midland to transfer the note by endorsement so as to pass good title to appellant. 4 Am. & Eng. Enc. of L. 246.

A check on a bank without funds is not a payment. The transaction between McEachin and Cunningham, the president of the bank, occurred after the note had been assigned to appellant, and was forbidden by statute. Kirby's Dig., § 521. Even if McEachin had paid cash, instead of a check, to the Bank of Midland, such payment would not have released appellee from payment of the note. The maker of a note can not question the authority or capacity of the payee to make transfer thereof. 89 Ark. 435.

The undisputed proof shows that the note was assigned in the afternoon of July 30, 1912; that on the next morning, at a time when the bank was transacting business, it endorsed the note by its president. These facts clearly establish the date of the assignment, and appellant's right to sue on the note. 31 Ark. 128; 31 Ark. 20; 41 Ark. 242; 36 Ark. 501; 75 Ark. 170; 96 Me. 429, 52 Atl. 905.

2. The court erred in its charge to the jury, especially in placing the burden upon the plaintiff. In all cases where payment is pleaded, as was done in this case, the burden is on the party pleading payment to prove it. 22 Am. & Eng. Enc. of L. 587, note 3, and Arkansas cases there cited; 67 Ark. 169.

*A. A. McDonald,* for appellee.

KIRBY, J., (after stating the facts). The court erred in not directing a verdict for appellant. The undisputed testimony shows that appellee executed the note sued on to the bank, that the bank transferred and delivered it to

appellant company for value, and it was due and unpaid at the time suit was brought. It is also true that R. A. McEachin, in trying to effect a settlement of his wife's account with the bank to prevent loss of her deposit, asked Bishop if it would be satisfactory for him (McEachin) to pay off this note to the bank and let Bishop execute him a new note therefor. That Bishop agreed to this, and McEachin did pay the bank $600 by a check from his wife on her account and took a receipt from the bank, already set out in the statement of facts. He was told at the time that the Bishop note was not in the bank, but was in Fort Smith, and would be gotten and turned over to him.

In *Block* v. *Kirtland,* 21 Ark. 393, the court said: "A payment by the maker of a negotiable note to the original payee after the note has been assigned, is not a good defense to an action by the assignee against the maker under the statute, nor by the Law Merchant. The maker must take care that the person to whom he pays a negotiable note is its holder or in possession of it." And in *State National Bank* v. *Hyatt,* 75 Ark. 174, "Payment to a bank of the amount due on a note made payable there, when the bank does not have possession of the note or authority to collect it, does not discharge the maker."

McEachin, who claims to have paid the note to the bank for the maker, knew at the time that the note was not in the possession of the bank, but that it was at Fort Smith, and the maker of the note was notified by the appellant, the assignee thereof, that it held the note and was the owner, before he paid any money to McEachin on the new note executed to him. Of course, the bank had no authority to collect the note after its delivery to appellant, and could not release any part of the consideration after its assignment. *State Nal't Bank* v. *Hyatt, supra;* Kirby's Digest, § 521. This was a negotiable note transferred and delivered to the appellant, it is true, after it became due, but this did not prevent it continuing negotiable, and gave the assignee the right to collect it,

subject only to defenses existing at the time of the transfer.   Appellant can not be deprived of his right to collect the note because appellee saw fit to execute a new note to another person, without first requiring the delivery to him of this one, and thereafter paid one-half the amount of the new note, notwithstanding the notice to him that appellant was the owner of the note sued on.   The judgment is reversed, and judgment will be entered here in appellant's favor for the amount of the note and interest.   It is so ordered.