CALHOUN v. AINSWORTH.

Opinion delivered May 3, 1915.

1. BILLS AND NOTES—MATURITY—EXTENSION.—A note was given in payment for certain lots which the maker had purchased. The note was payable on a day certain but the contract of sale provided that payment could be delayed a certain time. *Held*, the stipulation in the contract did not operate as an extension of the note in the hands of a purchaser after the date upon which the note, upon its face, matured.

2. BILLS AND NOTES—ASSIGNMENT OF NOTE—PAYMENT TO PAYEE—MATURITY—AUTHORITY.—The maker of a negotiable note transferred after maturity will not be protected by payments to the original holder unless the latter was authorized by the true owner to collect them, or produced the note at the time of the payment, and when the original holder accepts payments, in order for the same to bind the true holder, actual authority to receive the same must be shown.

Appeal from Miller Chancery Court; *James D. Shaver*, Chancellor; reversed.

*Gustavus G. Pope*, for appellant.

1. Appellant not having given the Texarkana Trust Company any authority to collect any part of the principal of these notes, and having no knowledge of its custom of requiring deposits to meet payments, and he having purchased the note before any of these deposits were made, he is not bound thereby. 64 Ark. 119; 111 Ark. 263. After the purchase, the note was in the possession of appellant, and not in the possession of the Trust Company. The latter did not have even apparent authority to collect payments on the note. 141 S. W. 205; 102 Ark. 427.

The maker of a negotiable note who pays the same to the payee who is not the holder, is not discharged from his obligation to the holder, unless it be shown that the payee was authorized to receive payment, or that the holder led him to believe that the payee was so authorized. *Supra;* 109 Ark. 107; 55 Ark. 347; 89 Ark. 435.

The fact that the note was sent to the Texarkana Trust Company each year for payment of the annual

interest does not warrant an inference that it had authority to collect the principal. 105 Ark. 152; *Id.* 446; 75 Ark. 170; Kirby's Dig § § 509, 521.

The fact that the note was past due did not affect appellants rights as to anything that transpired after the purchase. 111 S. W. 1189; 168 S. W. 1086.

2. If it should he held that appellee Ainsworth is entitled to the credits claimed, then it is a trust fund in the hands of the receiver, and he should be directed to pay it over to appellant. 104 Ark. 550, 558, 560.

*J. D. Cook,* for appellee, Ainsworth.

On the question of payment, the evidence clearly justifies the findings of the chancellor, and they ought not to be disturbed. 99 Ark. 128; 86 Ark. 212; 78 Ark. 275; 90 Ark. 40; 97 Ark. 537; 104 Ark. 9.

The testimony shows that the Trust Company acted as agent both in the collection of interest and principal of all the notes sold to appellant, and that this was the custom on all paper and notes sold to him. The rule is that when the note and money meet in the hands of an accredited agent, the payment will be complete even though the payment may have come into the hands of the agent previous to the completion of his agency by delivery of the papers, provided the agent still has the money in his possession. 42 Ala. 117; 75 Cal. 66.

The Trust Company all the time held possession of the contract of sale in this case; it held possession of the security at the time all the payments were made, and the maker was protected in the payments to it. 168 S. W. 1068; 4 Hun. (N. Y.) 129.

*Frank S. Quinn,* for the receiver.

The evidence is not sufficient to establish a trust fund in the hands of the receiver. Appellant has failed in the first requirement of the law, that is, to identify the funds received in trust for the payment of the note. 73 Ark. 324; 99 Ark. 553; 104 Ark. 550; 83 Ark. 486.

McCULLOCH, C. J.  The Texarkana Trust Company (now defunct), a corporation engaged in the banking

business in the city of Texarkana, agreed to sell certain lots of real estate in Texarkana to the defendants, J. S. Ainsworth and his wife, Jennie Ainsworth, executing a contract in writing covering the sale, and said defendants executed to the vendor a negotiable promissory note for the sum of $625.00 for the purchase price of said lots, with 8 per cent interest from date until paid. The note was due and payable on its face one year after date, but the contract of sale contained a stipulation that on payment of as much as $100.00 per annum the date of payment would be extended from year to year. The note was dated April 6, 1908, and was sold and transferred by the payee to the plaintiff, J. S. Calhoun, on Dec. 1, 1910. Plaintiff resided in Memphis, Tennessee, and the negotiations for the purchase of the note, together with other transactions, was conducted by correspondence. The Texarkana Trust Company failed and was placed in the hands of a receiver by the chancery court of Miller County on Nov. 12, 1913. Nothing had been paid to plaintiff on the note except the interest, but there was a credit of $330.16 standing on the books of the Texarkana Trust Company in favor of Mrs. Jennie Ainsworth, which was placed there to be paid on the note but had never been reported to nor paid over to the plaintiff, Calhoun. It was, according to the testimony, held in the bank to be finally applied on the note, but was never so applied. This is an action by the plaintiff to recover the amount due on the note and to enforce a lien on the land embraced in the contract of sale. The receiver of the bank was joined as defendant and the controversy in the case relates solely to the alleged credit of the amount of money in the bank, which defendants insist should be placed on the note in the hands of the plaintiff. The chancellor decided the disputed issue in favor of the defendants and rendered a decree in favor of the plaintiff for the balance due on the note after crediting said sum in bank, and enforced a lien on the lots therefor.

(1)   The plaintiff was, as before stated, a resident of the city of Memphis and was never in Texarkana and had no acquaintance with any of the officers or employees of the bank except through correspondence concerning this and similar transactions which he had with the bank. The undisputed evidence shows that he purchased the note in good faith and paid face value therefor, and according to his own testimony he never authorized the bank to make any collections for him except when he sent the note to the bank for the interest to be collected and credited thereon. He purchased the note after maturity.   The point is made that the stipulation in the contract for an extension of time operated as a postponement of the date of payment so that the note was immature at the time of the assignment.   We are of the opinion, however, that the contention is not sound, and that this note must be treated as mature upon its face, which carried with it notice to the assignee of any defects or any defences to which the makers were entitled as against the original payee.   But treating the note as one which had been assigned after maturity, we are of the opinion that the evidence fails to show that the payments made to the bank were authorized by the plaintiff or that he was bound by them; and such payments as were made to the bank after it ceased to be the holder of the note, and without having the note in its possession, were not valid as against the true owner.

(2)   In the recent case of *Mammoth Vein Coal Co.* v. *Bishop,* 113 Ark. 585, 168 S. W. 1086, we held that the maker of a negotiable note transferred after maturity would not be protected by payments to the original holder unless the latter was authorized by the true owner to collect it or produce the note at the time of payment.   In that case we said:   "This was a negotiable note transferred and delivered to the appellant, it is true, after it became due; but this did not prevent it continuing negotiable, and gave the assignee the right to collect it subject only to defences existing at the time of the transfer."   The authorities on this precise question are mea-

ger, but all that has been said and written on the subject is in support of the position which this court has taken. The rule was thus laid down by Mr. Daniels in his work on Negotiable Instruments (6th ed.) Vol. II, section 1233A. The Virginia Court of Appeals, in the case of *Davis* v. *Miller,* 14 Grat. 1, in discussing the subject, referred to paucity of authority on this particular question and explained it by saying that the proposition was so plain that it had rarely ever been controverted. The same rule was declared by Chief Justice SHAW in *Baxter* v. *Little,* 6 Metcalf 7, in language which appears to be dictum, but it is undoubtedly sound and is in accord with the few authorities on the subject. In a recent case decided by the Missouri Court of Appeals, it was said: "It being a negotiable note, payable to order, though past due, it was the defendant's duty to demand its production at the bank, as payee, before making payment. The payor of a negotiable note, though he does not know of its transfer, is not protected in paying to the payee who has sold and endorsed it to another." *Powers* v. *Woolfolk,* 111 S. W. 1187.

Now, the evidence in this case is sharply conflicting as to whether or not the defendants, Ainsworth and his wife, were apprised of the fact that the note had been transferred to plaintiff at the time the money was placed in bank. Mrs. Ainsworth testified positively that she had no knowledge or information on the subject and never received any communication from the plaintiff, Calhoun, until after the failure of the bank. The testimony of the officers and employees of the bank tends to establish a custom in cases of this sort, where they would transfer paper secured by real estate through transactions in that department of the bank, to open up a savings account with the vendees and allow payments to be made in installments, which were credited but not allowed to be drawn against, and at intervals the amounts would be credited on the notes. The bank officials claim that these payments received from Mrs. Ainsworth were treated in that way, but Mrs. Ainsworth denied that she had any in-

formation of that method of doing business, and says that they were straight payments on the note. On the other hand, the testimony of the plaintiff is that he had no information whatever of the bank's method of doing business and never authorized the bank to make any collections except when he sent the note to the bank for the collection of interest, supposing at the time that the bank was representing the makers of the note. At all other times he says that he kept the note in his possession at Memphis. He testified also that he generally wrote to Ainsworth and wife, giving notice of the approaching date for the payment of interest, and he exhibits a carbon copy of a letter dated March 30, 1911, notifying the Ainsworths that the interest would be due on April 6th of that year. Mrs. Ainsworth testified that she did not receive that letter or any other letter from plaintiff on the subject. Her husband's testimony on the subject is somewhat equivocal. He first said positively, in response to the question of his attorney, that he did receive the letter from plaintiff in 1911 informing him of the fact that plaintiff held the note, but after being pressed on the subject he retracted that statement and stated that he meant to say he received a letter from the plaintiff in 1914, and that was the first notice he had of the assignment of the note. It is unimportant to decide whether or not the defendants or either of them did in fact receive notice of the assignment before the disputed payments were made to the bank, for we are of the opinion that in either event the evidence fails to show any authority on the part of the bank to collect the money for plaintiff, and that the latter is not bound by those collections which were not in fact paid over to him.

It is thoroughly established by decisions of this court that the assumption of authority, under such circumstances as shown in this case, is not binding upon the holder of a note, and in order to bind him they must show actual authority or acceptance of the payments with knowledge of the assumption. In *Koen* v. *Miller,* 105 Ark. 152, we said: "Authority of an agent to collect interest on

a mortgage does not afford ground for inferring authority to collect the principal, where the agent is not intrusted with the possession of the securities.'' There is testimony in this case on the part of the bank employees tending to show that in transactions between plaintiff and the bank the plaintiff authorized the bank to collect notes which had been transferred, but this is positively denied by the plaintiff and we are of the opinion that the record fails to show enough to sustain the decree on that point. The testimony adduced on this subject by the bank officials is far from convincing on account of the fact that every transaction was carried on by correspondence and they fail to produce a single line from the plaintiff which would tend to show that he gave the bank any authority to collect. There is a letter, which relates to another transaction, which might have some tendency to show authority to collect in that particular matter, but it does not go to the extent of showing any authority to collect in other transactions. There is, too, testimony of a custom on the part of that particular bank to make collections for its customers, to whom notes had been assigned, but the usage of that bank is not sufficient to establish a general custom, and unless notice of it was brought home to the plaintiff he was not bound by any such usage. *Exchange National Bank* v. *Little,* 111 Ark. 263.

It is unfortunate that as between two innocent parties, the plaintiff on the one hand and the defendants, Ainsworth and wife, on the other, one or the other must be the loser on account of the wrong done by the officials of the bank either in accepting the money from Mrs. Ainsworth in the first instance or failing to transmit it to the plaintiff on the other hand; but plaintiff can not be made to bear the loss if he did nothing to cause it and was a bona fide holder of the note. We think that the plaintiff made out his case and is entitled to a decree for the amount of the note, less the payments which were made to him. He should also be decreed a lien on the land, for he is entitled to subrogation to the rights of the

original vendor. *St. Peter's Lit. Association* v. *Webb,*
31 Ark. 140; *Martin* v. *O'Bannon,* 35 Ark. 62.

The decree is therefore reversed and the cause re-
manded with directions to the chancellor to enter a de-
cree in favor of the plaintiff in accordance with this
opinion.