Coös,
April 3, 1923.

ISABEL H. CLARK, *Ex'x*, & a., v. FRANK J. WHEELER & a.

SAME v. SAME.

A mortgagor is not a competent witness in an action of foreclosure by the assignee of a mortgage and the mortgagee's estate, there being an equity in the mortgage held by the estate.

The maker of a note is incompetent to testify in an action by the indorsee, the payee being dead and the indorsee not having elected to testify under P. S., c. 224, s. 19.

The mere fact that a claim for payment is made does not establish a debt.

An application of payments was held to be justified both in law and in fact as carrying out the probable intention of the parties.

The outstanding liability of a surety cannot, until his payment of the debt, constitute a claim against the principal or be the subject of set-off against him.

A motion for a new trial will not be granted unless it is probable a different result will be reached upon another trial.

Payment by the maker of a note prior to its transfer is a good defence to an action against him by an indorsee who took it after it became due although he paid full consideration for it and had no notice of the payment.

TWO BILLS IN EQUITY, to foreclose two separate mortgages; both heard by a referee, who found the amount due on the debt secured by each; and the court subject to exception ordered judgment on the report. As to one known as the Lead Mine Valley mortgage held by the Berlin National Bank, the defendants waived their exceptions and assented to judgment on the report. The exceptions relied upon relate to what was called the Burbank Valley mortgage. This mortgage, dated October 15, 1913, was given to William K. Aston by the defendant Wheeler to secure the payment of twelve promissory notes amounting to $3,561.13. May 28, 1914, Wheeler conveyed the mortgaged premises to the Shelburne Bobbin Company. October 22, 1915, the Shelburne Bobbin Company conveyed the same to the Shelburne Manufacturing Company, both companies being composed of substantially the same parties. June 15, 1915, Aston procured from Wheeler a note for $2,953.63, the amount then due on the mortgage notes, payable to Aston or order on demand. July 21, 1915, Aston indorsed this note to the Fidelity Savings Bank and having deposited with it as collateral security the mortgage and notes in suit, received of the bank the face of the Wheeler note, $2,953.63.

Aston paid the interest on the note for $2,953.63 to July 15, 1919, and there is now due the bank thereon that sum with interest from July 14, 1919. Aston died late in 1919. Between the date of the mortgages and Aston's death there was voluminous correspondence between the parties; payments were made and notes given. Statements of the account represented by both mortgages were prepared by Aston and rendered the defendants. The one rendered July 21, 1917, stated as due on the Burbank Valley debt $2,953.63 and interest to October 15, 1917, $177.22. This statement was certified "as in all respects just and true" by Wheeler and the treasurer of the manufacturing company. At this time, notes referred to as collateral were given Aston for the interest due on both debts to be considered as payment of interest only when paid. These notes

have not been paid. It was admitted the defendants were to have credit on the mortgage debts only as they made payment in money.

After July 21, 1917, $660 was paid Aston. The defendants did not agree as to the application of this amount. The referee applied it first to the payment of interest on the Burbank Valley debt to October 15, 1917, and the balance toward the interest on the Lead Mine Valley debt.

The referee finds there was due on the Burbank Valley mortgage debt $2,953.63 with interest semi-annually from October 15, 1917. The defendant Frank J. Wheeler, the maker of the note and mortgage, was offered as a witness and excluded subject to exception. The notes given for the interest, shown by the statement of July 21, 1917, have not been paid, and as they were given upon the agreement that they were not to be considered as payment unless paid, they have not been allowed by the referee.

The referee found all the defendants chargeable with notice that the mortgage notes were pledged to the savings bank. Subject to exception, the defendants put in evidence a letter from attorneys in New York dated January 16, 1919, demanding payment of two notes signed by Wheeler payable to the defendant manufacturing company and indorsed to Aston amounting to $530.40. There was no other evidence as to these notes.

The defendants claimed that the place of payment was inserted in the mortgage notes after signing and that this constituted a material alteration avoiding the notes. The referee ruled the fact to be immaterial, finding that if the place of payment was subsequently inserted it was done with the knowledge and assent of Wheeler and that of the treasurer of the defendant company. A list of notes given Aston appearing upon the company's books was put in evidence. The notes were given for the mutual convenience of the parties upon the understanding that only notes actually paid should be applied on the mortgage indebtedness. Subsequently the plaintiffs produced all the notes in the defendants' list with a single exception.

In their bill the defendant company took exception:

(1) to the finding or ruling that they are bound by acts of Wheeler after his conveyance of the mortgaged premises,

(2) to the ruling of the referee that their right of election as to the application of payments made by them applied only to payments made after July 21, 1917,

(3) to the ruling that they were chargeable with notice of the assignment of the mortgage to the savings bank,

(4) that there was no evidence from which it could be found the place of payment was inserted in the notes with Wheeler's consent,

(5) that there was no evidence the various notes other than the mortgage notes were not to be credited on the mortgage debt unless paid.

The court, *Marble*, J., ordered judgment on the referee's report subject to defendants' exceptions and allowed the foregoing bill of exceptions.

*Harry G. Noyes* and *Sullivan & Daley (Mr. Sullivan* orally), for the plaintiffs.

*Ovide J. Coulombe* and *Crawford D. Hening (Mr. Hening* orally), for the defendants.

PARSONS, C. J.   Aston, mortgagee, pledged the mortgage notes to the Fidelity Savings Bank July 21, 1915, as collateral security to a note for $2,953.63 then discounted for him by the bank.   There is due the bank on the note discounted by it for Aston its face $2,953.63 with interest from July 14, 1919, the interest to that date having been paid by Aston.   There is due on the mortgage notes pledged $2,953.63 and semi-annual interest from October 15, 1917.   The amount due on the collateral as between the maker and payee exceeds the amount due on the debt for which it was pledged by nearly two years' interest.   Unless, therefore, there is error in the finding of the amount due on the mortgage notes, the questions that have been suggested of the sufficiency of the evidence to authorize the finding that the defendants had notice of the assignment to the bank, the materiality of such notice as matter of law, whether the purchaser of overdue paper for value holds such paper subject to equities thereafter arising between the payee and former holders and the validity against such holder for value of subsequent payment to one not then the holder, are not presented.

Wheeler was properly excluded as a witness.   His conveyance of the mortgaged estate did not discharge his liability on the notes or the covenants of the mortgage.   Aston's estate owned an equity in the mortgage and he was not a competent witness in the suit of Aston's executrix to enforce against him the right of the estate. P. S., c. 224, s. 16.   As maker of the notes, after the death of the

payee he was also incompetent (P. S., c. 224, s. 19), the plaintiff not having elected to testify.

Subject to plaintiff's exception an attorney's letter dated in 1919 was put in evidence demanding payment of two notes signed by Wheeler, payable to the Shelburne Manufacturing Co. and by them indorsed to Aston and by him also indorsed. There was no evidence the defendants had paid anything on these alleged notes, or if they had, that the debt was Aston's rather than Wheeler's, as it appeared on the face of the papers. The evidence, if competent, merely tended to prove the making of a claim. In the absence of any other evidence the fact that such a claim was made did not conclusively establish a debt from Aston to the defendants which they could set off against their debt to him.

Other exceptions set out in the bill are without foundation.

(1) It does not appear that the referee has held the defendant company bound by any acts of Wheeler after his conveyance of the mortgaged premises.

(2) The statement of July 21, 1917, showing the application of all payments to that date with the written assent of the defendants to its verity was evidence of their agreement to the application of all payments then made, and justified the ruling that the right of election remaining to them related to subsequent payments. There was no evidence of any express direction as to the application of the $660 paid after July, 1917, although the statement furnished by Aston's book-keeper to the defendants indicated the application of the whole sum on the Lead Mine Valley debt, which, in the absence of direction from the debtor paying, the creditor might lawfully make. *Bean* v. *Brown,* 54 N. H. 395, 397; *Caldwell* v. *Wentworth,* 14 N. H. 431. It is a well settled principle in this state that payments are to be applied first to the interest and then to the principal. *Townsend* v. *Riley,* 46 N. H. 300, 314. If the law instead of the parties is to make the application, the principles of equity are to be recognized, *Proctor* v. *Green,* 59 N. H. 350, 353, and the law infers that the parties intended a just application at the time of the payment. *Bancroft* v. *Holton,* 59 N. H. 141. The application made by the referee is justified in law and in fact as carrying out the probable intent of the parties.

(3) Whether the defendants are or are not chargeable with notice of the assignment to the bank is, as already suggested, immaterial.

(4) No evidence has been pointed out tending to establish a material alteration in the notes after signing. There was evidence

to the contrary. The exception to the sufficiency of the evidence to sustain the finding of the referee that the insertion of the place of payment if made after signing was with the knowledge and assent of the defendants has not been insisted upon in the brief and is understood to be waived. The referee, however, might well draw that conclusion from the evidence of the intimate relations to the parties and the manner in which the whole business was carried on.

(5) A note is not payment of a pre-existing debt unless it is expressly agreed to be received as such. *Moore* v. *Fitz*, 59 N. H. 572. It is not claimed there was evidence these unsecured notes were accepted as payments on Aston's claim secured by mortgage. In the absence of such evidence, the finding of the referee that the notes were not to be credited as payment until paid in cash is sustainable without the express evidence to the fact contained in the case. The notes were accommodation paper executed for Aston's benefit. On them the defendants assumed certain liabilities for Aston. The most that could be claimed on them was the existence of an outstanding liability of the defendants for Aston's benefit. There was no evidence the defendants had paid or were likely to be compelled to pay anything on this liability. Until payment is made they have no claim against Aston's estate. They cannot sustain a set-off for money paid without showing they paid something. Of this there was no evidence.

After the transfer to this court, the defendants moved, in the superior court, for a recommittal of the case to the referee for the introduction of further evidence. This motion was denied subject to exception, which with the evidence in support of the motion was transferred by the presiding justice as an amendment to the case. This amendment was filed here after the argument and submission of the case and the preparation of the foregoing portion of this opinion. The exception to the order refusing to recommit the report might be disposed of as presenting no question of law. Laws 1917, c. 140, s. 3; P. S., c. 227, s. 11; *Cummings* v. *Tute*, 50 N. H. 22; *Jaques* v. *Chandler*, 73 N. H. 376, 381. In view, however, of the suggestion of a possible repetition of the motion after decision by this court, the final disposition of the litigation may be promoted by the present discussion of questions which have so far been passed over as not presented by the original record. What the defendants ask is a new trial upon the ground of newly discovered evidence. If evidence is presented sufficient to establish the other facts essen-

tial to the grant of such a trial, it is not granted unless it is probable a different result will be reached upon another trial. *McGinley* v. *Railroad,* 79 N. H. 320. The newly discovered evidence is of other notes given Aston after the assignment of the mortgage notes to the savings bank. Assuming the defendants are able to establish that these unsecured notes were given to and accepted by Aston as payment when given upon the debt secured by mortgage, the question is whether payment to Aston after he had transferred the mortgage notes discharges the notes in the hands of the holder, the savings bank, who took them after maturity but for value.

It appeared that Aston discounted some of the earlier mortgage notes before they were due and that when the defendants failed to make payment, he took them up himself. The contention of the defendants that this payment by Aston constituted payment as between them and Aston does not require discussion as matter of law, and in fact is contradicted by the certificates given by them as to the amount due at the time the notes were taken by the savings bank.

The bank took the overdue notes subject to all the equities existing between Aston and the payors at that date. But there was no evidence or any claim except the one last above stated that there was not then due on the notes the $2,953.63 for which they were taken by the savings bank. The notes which the defendants claim were taken as payment on the mortgage debt were all given after the assignment to the bank.

Payment by the maker of a note prior to its transfer is a good defence to an action against him by an indorsee who took it after it became due although he paid full consideration for it and had no notice of the payment. *Whittaker* v. *Ordway,* 69 N. H. 182. But payment to the original payee after transfer and delivery of the note is no defence against the transferee although he acquired the note after maturity. 8 C. J., *p.* 802; *Calhoun* v. *Ainsworth,* 118 Ark. 316; L. R. A. (N. S.), 1915, E. 395; *Davis* v. *Miller,* 14 Grattan 1; *Baxter* v. *Little,* 6 Met. 7. "The payor, in making payment after maturity, must be sure that it is made to the then holder. For, if it should have been transferred after maturity, and before payment, to a third party, a payment to the transferer would be invalid, and the transferee holding the instrument could himself enforce payment." 2 Daniell, Neg. Inst., *s.* 1233.

A note though overdue is still negotiable. *Leavitt* v. *Peabody,* 62 N. H. 185, 188. The indorsee taking it after maturity can sue

on it in his own name. The payor having made the paper negotiable cannot assume that it has not been transferred although he has defaulted in his contract of payment. Paying the note, he has the right to have the note given up or his partial payment indorsed. *Chandler* v. *Drew*, 6 N. H. 469, 475. Insisting on this right, he would be in no danger of paying to one not the holder. "The indorsee of a note overdue takes a legal title, but he takes it with notice on its face that it is discredited, and therefore subject to all payments, and offsets in the nature of payment. The ground is, that by this fact he is put upon inquiry, and therefore he shall be bound by all existing facts, of which inquiry and true information would apprise him; but these could only apprise him of demands then acquired by the maker against the payee." *Baxter* v. *Little*, 6 Met. 7, 10, 11.

The defendants rely upon s. 58, c. 123, Laws 1909, known as the "Negotiable Instruments Act." This provides, "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." This section does not impair the negotiability of an overdue note. It assumes the continued existence of its negotiable character. The holder may sue in his own name. The fact that the paper is negotiable is relied upon in *Leavitt* v. *Peabody*, *supra*, holding that in an action of an indorsee in good faith for value of an overdue promissory note, the maker cannot set off debts due him from the payee. The defendants claim this decision is overturned by the statute. No decisions construing this section have been called to our attention.

Section 51 of the negotiable instruments act provides that payment to a holder in due course discharges the instrument. No suggestion is found in the act that payment to any other than the legal holder will discharge it. In the absence of such provisions the act does not appear to conflict with the decisions *supra* as to the invalidity of payments to the original holder after assignment.

But if it be assumed that the true construction of the statute is to practically transform a dishonored negotiable note into a non-negotiable *chose in action*, the claim is still assignable. The assignee takes it subject to all equities existing between the parties at the time. *Dearborn* v. *Nelson*, 61 N. H. 249. The assignee's title is perfect without notice of the assignment to the debtor. Notice to him is essential only to the assignee's protection against a *bona fide* payment to the assignor. After such notice the debtor pays at his peril to other than the assignee. *Marsh* v. *Garney*, 69 N. H.

236; *Corning* v. *Records*, 69 N. H. 390, 394; *Garland* v. *Harrington*, 51 N. H. 409; *Conway* v. *Cutting*, 51 N. H. 407.

Upon the defendants' view of the law and their claim as to the facts, whether they had notice of the assignment of the mortgage notes by Aston becomes material. This is a question of fact which the referee has found against them and upon which no further evidence is now offered.

June 15, 1915, Wheeler and the Shelburne Bobbin Co. by its treasurer signed what has been called "a certificate of estoppel," a declaration as to the validity of the mortgage and the amount due thereon, stating therein that the mortgage was about to be assigned by Aston. A year later, Wheeler and the Shelburne Mfg Co. by the same person as treasurer executed a similar statement as to the validity of the mortgage and the amount due thereon. This evidence shows defendants' knowledge of Aston's purpose to assign the mortgage, and was sufficient to put them on inquiry. There was other documentary evidence produced by the defendants tending to establish their knowledge of the assignment to the savings bank. The exception to this finding upon the ground that there was no evidence in its support cannot be sustained.

Unless this finding is reversed, a proposition which the motion for further trial does not advance, the evidence of additional notes given Aston in payment would not affect the result as to the savings bank.

*Exception overruled.*

PLUMMER, J., was absent: the others concurred.