56 So.2d 559

O'SHEE v. PIERCE et al.
No. 40043.

Jan. 14, 1952.

George J. Ginsberg, Alexandria, for defendant-appellant.

Peterman & Burden, Alexandria, for plaintiff-appellee.

LE BLANC, Justice.

Certiorari was granted in this case on the representation made in the application for writs that plaintiff was not a holder in due course of the note sued on, having acquired it an unreasonable time after maturity, and was subject to the defense of payment alleged to have been made to the payees; that as a result the note had lost its character of negotiability regardless of the time when the alleged payment had been made and its transfer to the plaintiff became an assignment governed by Civil Code, Articles 2642–2645 and more particularly, Article 2643 under which the maker (debtor) was entitled to notice before he could be held.

The District Court and the Court of Appeal, La.App., 47 So.2d 339, both held that the plea of payment could not be sus-

tained in view of the fact that the alleged payment had been made long after plaintiff had acquired the note. The effect of the judgment rendered was that the note was negotiable at the time of its acquisition by him and therefore the Articles of the Code relating to transfers or assignments of credits had no application. As the particular legal question presented never seemed to have been adjudicated in this State and appeared to be important, we considered it proper to order the record to be sent up. The matter is now before us for review.

The pleadings and the facts in so far as they are pertinent to the issue involved at this time may briefly be stated as follows:

The plaintiff alleged that he is the owner and holder in good faith and for valuable consideration of a promissory note dated Alexandria, Louisiana, December 11, 1943 in the sum of $1500.00, signed by the defendant Alton C. Pierce, payable on demand to the order of DeVane Pierce and Jack Pierce and that the said note is endorsed in blank by the payee DeVane Pierce and Jack Pierce through DeVane Pierce who acted as his attorney in fact, being his agent pursuant to a notarial power of attorney. In compliance with an order of court granted on an exception of vagueness he alleged in a supplemental petition that he acquired the said note sometime between December 1, 1944 and March 1, 1945, but was unable to recall the exact date.

Several defenses were set up in the defendant's answer but the only one with which we are concerned is one of payment of the note in full and it is pleaded that since plaintiff acquired the note, which was a demand note, more than one year after its date, he was not a holder in good faith before maturity and consequently the note was subject to all defenses which may have been urged against the original parties to it.

It is to be noted that the plea of payment merely recites that the said note "had been paid in full, prior to demand by plaintiff herein, and prior to institution by plaintiff of these proceedings, * * *." In answering the supplemental petition defendant denied that plaintiff had acquired the note on the dates alleged by him, and that, on the contrary, to the best of his knowledge and belief, and on information which he considers true and correct, he alleged that plaintiff acquired the said note during the spring or early summer of 1948, more than four years after its date.

The trial judge found as a fact, and on this he is borne out by the testimony in the case, that the note was negotiated to the plaintiff, William O'Shee, by one of the payees, DeVane Pierce, in lieu of one of the latter's checks which was held by him and which had never been cashed because, on inquiry at the bank on which it was

drawn, he was informed that there were not sufficient funds on hand with which to pay. He also found, and this is also borne out by the testimony, that O'Shee acquired the note around the beginning of 1945.

On trial of the case, counsel for plaintiff objected throughout to the introduction of any evidence or testimony tending to support the plea of payment, on the ground that the plea had not been set out in detail and without any facts alleged on which to permit the introduction of any testimony. The trial judge admitted the testimony subject to the objections made and concluded, as we understand from his written opinion, that the note may have been included in a settlement of the affairs of a partnership which formerly existed between the defendant Alton Pierce and his two brothers, DeVane and Jack Pierce, original payees of the note. We entertain serious doubt as to the correctness of the trial judge's ruling on these objections as it is undoubtedly the law that a plea of payment is a special plea which has to be specifically set out and supported by competent proof, but we may well pretermit the question and assume that there was some such settlement as is referred to which included the liquidation of the note, for the purpose of considering the question with which we are confronted at this time.

It is the contention of counsel for the defendant that the trial judge and the Court of Appeal both erred in their application of the law, claiming that since the note

was negotiated to plaintiff more than a year after the date of its issue, which was an unreasonable time, it became non-negotiable. He bases this contention on two of the sections of the negotiable instrument law which has been incorporated in the Revised Statutes of 1950. These are LSA–R.S. 7:53 and 7:58. The first of these sections reads as follows: "Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course".

The second reads as follows: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect to all parties prior to the latter."

It thus appears that whilst the latter of these two sections provides that in the hands of a holder other than a holder in due course, the instrument is subject to the same defenses as if it were non-negotiable, it does not state that because of this it becomes non-negotiable. In fact, LSA–R.S. 7:47 provides: "An instrument negotiable in its origin continues to be negotiable until it has been restrictively indorsed or discharged by payment or otherwise."

The question of a restrictive indorsement does not arise in this case and all that the

defendant is relying on is that the note has been discharged by payment, and in this connection it becomes important to determine when the payment alleged to have been made, actually was made, for, as we have concluded, in line with the jurisprudence that is established in other jurisdictions, the rights of the transferee of an instrument such as the plaintiff in this case depends upon whether the payment claimed was made before or subsequent to the transfer in which he became the holder thereof.

The rule which governs is laid down in 10 C.J.S., Bills and Notes, § 510 as follows: "Payment or discharge is a defense to an action on a negotiable instrument as between the original parties thereto; if made *prior* to the transfer of the instrument it is good as to parties not holders in due course, but is insufficient as to holders in due course; if made *after* transfer of the instrument it is insufficient." (Emphasis supplied.)

In the body of the same section there is found the following positive statement: "Payment to the original payee after transfer and delivery of the note is no defense against the transferee, although he acquired the note after maturity."

Supporting the text there is cited the case of Clark v. Wheeler, 81 N.H. 34, 121 A. 588, 591, from which we quote the following: "Payment by the maker of a note prior to its transfer is a good defense to an action against him by an indorsee, who took it after it became due, although he paid full consideration for it and had no notice of the payment. Whittaker v. Ordway, 69 N.H. 182, 38 A. 789. But payment to the original payee after transfer and delivery of the note is no defense against the transferee, although he acquired the note after maturity. 8 C.J. p. 802; Calhoun v. Ainsworth, 118 Ark. 316, 176 S.W. 316, L.R.A. 1915E, 395; Davis v. Miller, 14 Grat., Va., 1; Baxter v. Little, 6 Metc., Mass., 7, 39 Am.Dec. 707.

"'The payor, in making payment after maturity, must be sure it is made to the then holder, for if it should have been transferred, after maturity and before payment, a payment to the transferor would be invalid, and the transferee holding the instrument could himself enforce payment.' 2 Daniel, Neg.Inst. 1233a."

In Stegal v. Union Bank & Federal Trust Co., 163 Va. 417, 176 S.E. 438, 446, 95 A.L.R. 582, the court had for consideration the question with which we are concerned and stated:

"So far as we have been able to find there is no reported case decided prior to the enactment of a statute of set-offs in which it was decided whether, where the payee of a negotiable instrument transferred it after its maturity, the transferee took it subject to payments made to the payee by the promisor either before the transfer, or thereafter, and before the promisor received notice of the transfer.

"But it can safely be said with reference to *payments* that the consensus of opinion of the courts and text-writers who have considered the subject with any degree of care is this: Under the law merchant (independent of a statute of set-offs) a post maturity transferee of a negotiable instrument takes it subject to all payments made by the promisor after its maturity to a prior party while he was the holder thereof. But, if he be a bona fide purchaser for value, he does not take it subject to payments made after the transfer, though the promisor may have no notice of the transfer." Numerous cases are cited.

The contention that is now made by counsel for defendant that the note sued on, being in the hands of one who is not a holder in due course, is no longer negotiable and partakes now of the nature of an assignment under the Articles of the Civil Code making it encumbent on the holder or transferee, under Article 2643 to notify the maker of the transfer, is, in our opinion, without merit. As we have pointed out before the mere fact that he is not a holder in due course, having acquired the note long after maturity, does not of itself destroy its negotiability. That proposition we find is also supported in the jurisprudence of other states, notably, in the case of Clark v. Wheeler, supra, and also in Doepke v. Cocke, 45 Ga.App. 65, 163 S.E. 310, from which we quote the following: "An instrument containing terms of negotiability, such as a note payable to the payee, or his order, does not lose its character of negotiability by becoming overdue. Therefore the transferee of a negotiable instrument who acquires it after it has become overdue is not required to give notice to its maker as to its transfer or assignment, in order to establish his title thereto as against subsequently accruing equities between the transferor and the maker. The provisions of section 3653 of the Civil Code of 1910, which provide that an assignment of a chose in action vests title in the assignee subject to existing equities between the assignor and the debtor at the time of the assignment and 'until notice of the assignment is given to the person liable,' by the express terms of this Code section do not apply to negotiable instruments."

We think that we are safe in following the jurisprudence as thus enunciated by other courts on questions involving the interpretation of the uniform negotiable instrument law, from which it follows that whilst the jurisprudence is well settled to the effect that one taking a note after maturity is subject to all defenses existing between the maker and all former holders this means all defenses or equities existing at the time of or prior to the transfer of the instrument by a former holder and not those arising subsequent thereto.

For the reasons stated the writs heretofore granted are now recalled and the judgment of the Court of Appeal is hereby affirmed.