DECISION
This case comes before the Court from a landlord appeal of a Sixth Division District Court decision, CA. No. 97-6070, in a commercial trespass and ejectment action pursuant to R.I.G.L. 1956 § 34-18.1, et seq., for the nonpayment of rent and other related charges due and payable under the terms of a lease agreement. This Court possesses jurisdiction pursuant to R.I.G.L. 1956 § 34-18.1-9(4).
 FACTS AND TRAVEL
The landlord, Apple Valley Mall, LLC (plaintiff), is a limited liability company organized under the laws of the State of Rhode Island. In July 1996, the plaintiff became the successor in interest and lessor of commercial property located on Putnam Pike, in Smithfield, Rhode Island, (leased premises), under a certain Amended and Restated Shopping Center Lease (lease) dated May 1, 1991. The tenant, Floyd Realty Co., Inc. (defendant), is a corporation organized under the laws of the State of Rhode Island and is a wholly owned subsidiary of The Stop Shop Supermarket Company. In February 1996, the defendant became the successor in interest and lessee of the leased premises under the terms of the lease. However, the defendant does not occupy the leased premises but has duly subleased the leased premises to two retail subtenants with the plaintiff's permission. Moreover, the plaintiff has entered into nondisturbance agreements with the subtenants that provide for a continuation of the subleases such that the subtenants' possession will not be disturbed if the defendant's interest is terminated.
Prior to January 1, 1997, the defendant owed the plaintiff an annual base rent of $193,900.00, payable in twelve monthly installments of $16,325.00, and due on or before the first day of each month. Lease, Paragraph 4.1. However, beginning on January 1, 1997, a first option period had commenced under the lease that increased the annual base rent to $216,616.00, or $18,218.00 per month, a $1,893.00 increase in the monthly installment payment.Id. at Paragraph 2.5. Moreover, the lease provides that the defendant is responsible for paying certain operating expenses and that the plaintiff must provide the relevant documentary information categorizing individual amounts supporting each operating expense billed to the defendant. Id. at Paragraph 6.1. The lease states in relevant part that
 "The Landlord shall provide Tenant with a written statement . . . setting forth the Operating Expenses actually incurred by the landlord for the applicable monthly period. Such certificate shall include a breakdown by category of the items involved and set forth the amount applicable to each such item together with copies of any invoices or bills requested by the Tenant to document the Operating Expenses for each monthly period. The Tenant agrees to pay the Tenant's Percentage of such Operating Expenses as set forth on the aforesaid certificate and properly documented as aforesaid within thirty (30) days after Tenant's receipt of the aforesaid certificate." Id. at Paragraph 6.1.
If the defendant defaults by failing to pay the monthly rent installments or properly documented operating expenses as provided for in the lease, the plaintiff has to provide the defendant with written notice of nonpayment and ten days within which to cure the default. Id. at Paragraph 24.1. The lease states in relevant part
 "Event of Default. The tenant will be in default under this Lease upon the occurrence of any of the following events or conditions . . . .
 (a) the Tenant's failure to pay the Annual Base Rent, Percentage Rent, additional rent or any of the other payments at times and in the manner provided for herein, such failure having continued for a period of ten (10) days after written notice of such nonpayment being given by the landlord . . . ." Id. at Paragraph 24.1.
Moreover, the lease provides that all notices between the plaintiff and defendant shall be in writing and shall be mailed by registered or certified mail:
 "[i]f intended for the Tenant, addressed to Tenant . . . at the address or addresses as may from time to time hereafter be designated by Tenant in writing . . . . [a]ny notice or other document sent as aforesaid shall be deemed served or delivered on the earlier of the date received or seventy-two (72) hours after mailing thereof . . . ." Id. at Paragraph 28.1.
In a letter dated March 26, 1996 the defendant mailed to CK Associates, predecessor lessor to the plaintiff, a notice providing service instructions. The letter stated in relevant part that
 "[f]rom the date hereof, all notices to the Tenant should be forwarded to Floyd Realty Co., Inc., c/o The Stop Shop Supermarket Company, 1385 Hancock Street, Quincy Massachusetts 02169, Attention Vice President — Real Estate, with a copy under separate cover at the same address sent to the attention of the General Counsel." Defendant's Exhibit C.
However, Kimberly A. Simmons, (Simmons), Controller, Pillar Property Management, LLC, (Pillar), managing agent for the plaintiff, stated that she did not recall receiving the March 26, 1996 letter from CK Associates and that she was not aware of the notice and mailing requirements under the lease. Deposition ofSimmons, at 12-14. Moreover, Simmons stated that she usually mailed all billing statements to Maureen Conner, (Conner), The Stop Shop Supermarket Co., 1385 Hancock Street, 4th Floor, Quincy, Massachusetts. Id. However, Simmons stated that she would make correspondence with a different individual if prior communication was received from that individual regarding a particular matter. Id. On October 15, 1996 and November 5, 1996 Attorney Scott J. Summer, (Attorney Summer), attorney for Pillar, mailed a notice of nonpayment to Floyd Realty Co., Inc., c/o The Stop Shop Supermarket Company, 1385 Hancock Street, Quincy Massachusetts, because the defendant was not forwarding rental installment payments to the plaintiff but rather to the previous lessor. The evidence does not indicate that the defendant objected to plaintiff's mailing of billing statements and notices of nonpayment to a different attention than that stated in the March 26, 1996 letter.
The amount of the monthly rent installment due and payable by January 1, 1997 was $18,218.00. However, the defendant mailed a check to the plaintiff for the monthly rent payment in the amount of $16,325.00, a deficiency of $1,893.00. Additionally, the defendant owed the plaintiff for accrued operating expenses. A billing statement dated January 1, 1997, mailed from Pillar to Conner, stated an amount due of $58,999.93, which was comprised of $34,892.00 for real estate tax; $724.61 sewer assessment; $480.00 sewer usage; $52.52 for water; $992.13 for water; $3,640.67 common area maintenance charge; and $18,218.00 for monthly rent. A letter dated January 21, 1997 mailed from Simmons to Conner clarified the errors in the prior billing statement and recalculated the amounts owed plus accrued interest. The letter stated the amounts due as follows: $18,272.29 for real estate taxes and interest; $2,276.86 for sewer and water reimbursement and interest; $3,657.43 for common area maintenance charges and interest; and $1,901.71 for rent and interest due; totaling $26,108.29 in rent, operating expenses, and interest due.Defendant's Exhibit O. On January 28, 1997, Attorney Summer, mailed a letter entitled "Notice of Non Payment [sic]" to Floyd Realty Co., Inc., c/o The Stop Shop Supermarket Company, 1385 Hancock Street, Quincy, Massachusetts, mailed via certified mail, serving as formal notice from the plaintiff that rent and other charges totaling $26,133.46 were due and payable within ten days and if not paid, that Pillar would terminate the lease and evict defendant. Defendant's Exhibit P. However, on January 24, 1997 the defendant paid $3,640.67 for the common area maintenance charges billed on the January 1, 1997 billing statement and mailed a check to plaintiff dated January 30, 1997 in the amount of $16,325.00 for the monthly rent installment payment. As of February 1, 1997 the defendant made payments of $3,640.87 for common area maintenance charges and $16,325.00 for the February 1997 rent installment, totaling $19,965.00.
On February 4, 1997 John M. Hernon, (Hernon), Corporate Property Manager, The Stop Shop Supermarket Company, PO Box 1942, Boston, Massachusetts, mailed a letter to Simmons requesting operating expense documentation pursuant to Paragraph 6.1 of the lease, such as a copy of the site plan to determine the defendant's pro rata share of real estate taxes, a copy of the sewer assessment and usage, a copy of the water bills, and a common area maintenance charge of $131.94 for snow shoveling.Defendant's Exhibit CC. Moreover, Hernon stated that the "rental payment was erroneously shortpaid [sic] on 1/1/97 and . . . 2/1/97. A check in the amount of $3,786.00 is being processed to clear up the rental balances." Id. The defendant issued a check to plaintiff in the amount of $3,786.00 on February 20, 1997. The plaintiff states that this check was received on February 26, 1997 and that it was applied to the January 1997 and February 1997 rent installment underpayment because the check stub stated "January/February." Deposition of Simmons at 48.
On February 5, 1997 Walter F. Arndt, (Arndt), Senior Tax Accountant, The Stop Shop Companies, Inc., PO Box 369, Boston, Massachusetts, mailed a letter to Simmons referencing the January 28, 1997 notice of nonpayment and enclosed a check in the amount of $18,254.79, representing payment for outstanding real estate tax charges including $513.29 for disputed interest charges.Joint Exhibit E. Moreover, the letter stated that John Hernon of Stop Shop will separately handle the non-real estate tax charges. Id. On February 6, 1997 and February 7, 1997 the defendant issued two separate checks to plaintiff in the amount of $3,452.66 each. The plaintiff states that these checks were not received until some time after February 14, 1997 although there was no system in place to record when checks were received.Deposition of Simmons at 48-49. On February 6, 1997 and February 11, 1997, the plaintiff issued to defendant notices of nonwaiver certification. Joint Exhibits F and G. The plaintiff states that these nonwaiver notices are issued in the normal course of business whenever a tenant in nonpayment issues a check and it is received by plaintiff. Deposition of Simmons at 91-92. Therefore, as of February 11, 1997 the defendant had made payment as follows: the $19,965.00 prior to February 1997; and $18,254.79 for real estate taxes, $3,452.66, and $3,452.66; totaling $35,325.11.
On February 10, 1997 Simmons faxed and mailed a letter to Hernon that stated "[w]e look forward to receiving payment of the rental arrearage and other outstanding payments due. Once we have received all payments due, with interest to the date of payment, then Stop Shop's request for a refund or credit of such interest will be reviewed . . . ." Defendant's Exhibit BB. This statement was faxed to defendant within the 10 day cure period, which ended February 13, 1997, and also sent via regular mail. On February 14, 1997 plaintiff issued to defendant a notice of termination. Joint Exhibit I. On February 26, 1997 plaintiff issued to defendant a notice of nonwaiver certification. JointExhibit H. The defendant issued checks to plaintiff in the amounts of $19,073.50 on February 26, 1997; $8,870.75 on March 3, 1997; $18,218.00 on March 27, 1997. The plaintiff states that checks received after February 6, 1997 were mistakenly applied to the account balance and then removed from the defendant's ledger account because the plaintiff had terminated the lease.Deposition of Simmons at 31-32, 43-45.
 STANDARD OF REVIEW
In an appeal from the District Court to the Superior Court of a commercial trespass and ejectment action pursuant to R.I.G.L. 1956 § 34-18.1, et seq., for the nonpayment of rent and other related charges due and payable under the terms of a lease agreement, the plaintiff and the defendant have a statutory right to appeal the judgment and are entitled to a de novo hearing by the Superior Court. R.I.G.L. 1956 § 9-12-10; see also PutnamFurniture Leasing Co., Inc. v. Walter Borden et al, 539 A.2d 73
(R.I. 1988); Chrysler First Fin. Serv. Corp. v. Van Damm,566 A.2d 390 (R.I. 1989), cert. denied, 495 U.S. 936, 110 S.Ct. 2182, 109 L.Ed.2d 511 (1990). Furthermore, the availability of a hearing de novo by the Superior Court grants an appellant the right to have the Superior Court Justice use his or her independent judgment in ruling on the case merits. Finney OutdoorAdvertising Co., Inc. v. Ernest J. Cordeiro, 485 A.2d 910 (R.I. 1984); (citing Perry Equipment Co. v. Marine Trading Transportation, Inc., 390 A.2d 1110, 1111 (Me. 1978)).
 ANALYSIS
The threshold question is whether the defendant defaulted by not making timely payment to plaintiff for rent and operating expenses owed pursuant to the lease. A review of the circumstances surrounding the communications between the plaintiff and various departmental agents representing the defendant indicate that there was material confusion and disagreement concerning the plaintiffs calculations of the total amounts due. First, the plaintiff erred in calculating the January 1, 1997 billing statement by overstating the amount of real estate taxes due and by not providing the required supporting documentation for the real estate taxes, sewer assessments and usage, water usage, and common area maintenance charges. Second, the plaintiff and defendant were in disagreement about the amounts owed for the interest calculated on overdue balances and the application of prior rent and operating expense payments. Third, the defendant erred by failing to increase the January 1997 and February 1997 monthly rent installment payments as required under the first option period of the lease. Fourth, there was misunderstanding between the plaintiff and defendant as to which of defendant's agents the plaintiff was to mail the various invoices and notices.
The defendant argues that the errors contained in the January 1, 1997 billing statement and the January 21, 1997 clarification letter and the lack of proper documentation extended the time for payment of the real estate taxes, sewer assessment and usage, water usage, and common area maintenance charges to thirty days after the defendant received proper documentation. The defendant further argues that the plaintiff erroneously applied payments for rent and operating expenses to charges not yet due under the notice of termination and that all balances due and payable under the notice of termination were paid within the ten day cure period. Alternatively, the plaintiff argues that the defendant willfully failed to make full rent payment in a timely manner and that this failure resulted in a material breach of the lease. The plaintiffs memorandum makes no argument concerning the billing statement errors, the defendant's requests for documentation, the extension for payment of operating expenses, and the calculation of interest charges on overdue amounts.
The lease expressly provides that the defendant shall have thirty days to make payment after the plaintiff provides proper operating expense documentation. Lease, Paragraph 6.1, supra. Although Simmons stated that billing documentation was previously provided to the defendant, this Court finds the defendant's argument concerning the lack of documentation for the water, sewer, and common area maintenance snow shoveling charges credible. Deposition of Simmons at 21 and 22. By operation of the defendant's February 4, 1997 correspondence with plaintiff concerning operating expense documentation for the sewer and water charges, and the February 10, 1997 correspondence concerning the common area maintenance charge for snow shoveling, these charges were not due until March 6, 1997 and March 12, 1997, respectively.
Furthermore, the defendant argues that the February 1997 monthly rent installment and operating expense payments should have been applied to the prior balances then due under the notice of nonpayment and not applied to the February 1997 rent installment or operating expenses not due as of the notice of termination date. The plaintiff argues that the defendant's willful and deliberate default for nonpayment of rent continued for ten days after the notice of nonpayment. The plaintiff states in its memorandum that it mailed the notice of nonpayment on January 28, 1997 and argues that the defendant had ten days from January 31, 1997, seventy-two hours after mailing as provided in Paragraph 28.1 of the lease, or February 10, 1997, in which to cure the default. However, both the plaintiff and defendant state in their memoranda of law that the defendant did not receive the notice of nonpayment until February 3, 1997. The plaintiff did not present sufficient evidence to overcome defendant's argument that the notice of nonpayment should had been received prior to February 3, 1997, if in fact it was mailed via certified mail on January 28, 1997. The Court finds that the notice of termination was not mailed on January 28, 1997 and that the defendant had ten days from receipt, or until February 13, 1997, in which to cure the nonpayment. Additionally, the plaintiff relies on the February 4, 1997 letter acknowledging that the January 1997 and February 1997 monthly rent payments were erroneously underpaid and that defendant did not make payment but rather stated that "[a] check in the amount of $3,786.00 is being processed to clear up the rental balances." Defendant's Exhibit CC.
As a general rule under Rhode Island law, in every contract there is a duty imposed upon each party, and an implied covenant, to perform and enforce the contract in good faith and fair dealing. Centerville Builders, Inc. v. Wynne, 683 A.2d 1340, 1342 (R.I. 1996); (citing Crellin Technologies, Inc. v. EquipmentleaseCorp., 18 F.3d 1, 10 (1st Cir. 1994)); see also 17A Am.Jur.2d Contracts § 380 (1991). The phrase good faith and fair dealing has been interpreted to mean:
 "that neither party will do anything that will injure the right of the other to receive the benefits of the agreement; the implied covenant imposes upon each party the obligation to do everything that the contract presupposes the party will do to accomplish the contract's purpose . . . . Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed upon common purpose and consistency with the justified expectation of the other party . . . ." 17A Am.Jur.2d Supp. Contracts § 380 (1997); (quoting Careau Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 272 Cal.Rptr. 387 (1990, 2nd Dist.).
Moreover, the Uniform Commercial Code, as codified in R.I.G.L. 1956 § 6A-1-203, provides that "[e]very contract or duty within title 6A imposes an obligation of good faith in its performance or enforcement." The official comments state in relevant part that "[t]he principle involved is that in commercial transactions good faith is required in the performance and enforcement of all agreements or duties." R.I.G.L. 1956 §6A-1-203, at cmt.
The Court has determined in arguendo that if the notice of nonpayment and notice of termination were properly served and effective under law, the defendant did not default under the lease terms because it provided timely payment of the amounts due in the notice of nonpayment. Our Supreme Court has recognized the general rule of law that the debtor has a right to determine how payments are applied to amounts due in an account and ". . . in the absence of a direction to the contrary by a debtor, payment upon a general account may be applied by a creditor to the oldest item thereon, . . . ." (emphasis added). Harris v. Gilbert,46 R.I. 350, 128 A. 11 (1925); see also 60 Am.Jur.2d Payment §§ 94 and 106 (1987); 2 Restatement (First) Contracts §§ 387-393 (1932); 2 Restatement (Second) Contracts §§ 258-260 (1981). The Supreme Court extended its interpretation under Harris,supra, by stating "[i]t is well settled that the debtor may direct the application of a payment on account, but in the absence of such direction or a manifestation of intent the payment shall be applied in a particular manner, the creditor may apply such payment in the order which he may consider most advantageous to himself." Albert S. Eastwood Lumber Co. v.Britto, 51 R.I. 406, 410, 155 A. 354, 356 (1931); (citing Williston on Contracts, vol 3, § 1795; Harris v. Gilbert,supra.). Moreover, other jurisdictions have recognized and expanded these general application principles holding that:
 "[w]hen no application is made by either party, the law determines how the payments are to be applied in accordance with equitable rules and principles, and primarily, it deems the payments to have been made in discharge of the earliest liabilities of a running account — each item of credit is applied in extinguishment of the earliest debit items in the account; . . . . (citations omitted)." Page v. Wilson, 150 Pa. Super. 427, 28 A.2d 706, 709 (1942);
see also Clark v. Wheeler, 81 N.H. 34, 121 A. 588 (1923) ("If the law, instead of the parties, is to make the application, the principles of equity are to be recognized . . . . And the law infers that the parties intended a just application at the time of payment. (citations omitted)."); Snide v. Larrow, 62 N.Y.2d 633, 464 N.E.2d 480, 481 (1984) (The payment is presumed to be applied to the portion of debt first becoming due.); Fatland v.Wentworth Irwin, Inc., 149 Or. 277, 283-284, 40 P.2d 68 (1935) (When debts are not separate but constitute part of a general account and there is no application of payment by either party, a presumption, in absence of evidence to the contrary, is that payments made and entered into the account extinguished the earliest debts.); T. Dan Kolker, Inc. v. Shure, 209 Md. 290,121 A.2d 223 (1956) (If neither party makes application of the payment, the law may apply the payment "according to the justice of the case and usually to the payment of the earliest and most onerous debt.").
The evidence indicates that the defendant manifested an intent and communicated to the plaintiff to apply the $3,640.87 February 1, 1997 payment to common area maintenance charges; $16,325.00 January 30, 1997 payment to the February 1997 monthly rent installment; and $18,254.79 February 5, 1997 payment to accrued real estate taxes and disputed interest. The defendant did not direct the application of the two payments for $3,452.66 made on February 6, 1997 and February 7, 1997. The plaintiffs testimony concerning how checks received from the defendant were applied in the normal course of business is confusing. The plaintiff states that all charges relating to the defendant were listed in one general account ledger that itemized all outstanding amounts. Deposition of Simmons at 44-49. The plaintiff applied payments received by matching the amount of open items with the check(s) received, or by following the notation on the check stub or accompanying letter, or by applying payments to the oldest items outstanding. Id. There is no evidence to suggest that the plaintiff applied priority to one of these methods over the other method. The plaintiff also stated that if she had a question concerning how the defendant wanted a payment applied that she did not contact the defendant for clarification. Id. The evidence supports a finding, and defendant argues in its memorandum of law, that the January 30, 1997 payment for $16,325.00 was for the February 1997 rent installment payment. However, the defendant also argues that this payment should have been applied to the January 1997 rent installment underpayment and other outstanding charges due in the notice of nonpayment and not applied to the February 1997 rent installment payment which was not due on the notice of termination date. This Court agrees with the defendant's argument in fact but not in its legal reasoning.
By following the payment application rules discussed inHarris, supra, and Albert S. Eastwood Lumber Co., supra, the plaintiff was under an absolute duty to apply the payment as the defendant directed. 60 Am.Jur.2d Payment § 94 (1987) (Once the application of payment is made to a particular obligation by the debtor or creditor it is final and conclusive.). However, each party was also under a duty to perform and enforce the lease in a manner of good faith and fair dealing to achieve the common purpose of the lease and to maintain consistency with the justified expectation of the other party. Centerville Builders,Inc. v. Wynne; Careau Co., supra; Careau Co. v. SecurityPacific Business Credit, Inc., supra. To resolve this obvious conflict, other jurisdictions have recognized that the general payment application rules, as stated in Harris, supra, and AlbertS. Eastwood Lumber Co., supra, should not be followed when, from the circumstances surrounding the case, it appears that their application would be inequitable or unjust. 60 Am.Jur.2d § 94, supra; see also Village of Winfield v. Reliance InsuranceCompany, 64 Ill. App.2d 253, 212 N.E.2d 10 (1965); Dallas Title Guaranty Co. v. Valdes 445 S.W.2d 26 (Tex. Civ. App. 1969 writ ref'd n.r.e). Moreover, the Appellate Court of Illinois has held that "the general rules regarding the appropriation of payment will not be applied when, from the circumstances surrounding the case, it appears that the application . . . would work an injustice. (citation omitted)." Village of Winfield v. RelianceInsurance Company, supra at 12. This holding is in accord with the pronouncement of the Honorable Justice Cardozo in the case ofCarson et al. v. Federal Reserve Bank of New York, 254 N.Y. 218,172 N.E. 475, 480, 70 A.L.R. 435, wherein he stated:
 "We have no thought to suggest that this or any other formula as to the application of payments to the items of an account is of such inflexible validity as to admit of no exception. Whatever rule is framed will be subordinated to the broader principle that an application, usually may be varied by the court when variance is necessary to promote the ends of justice." Village of Winfield v. Reliance Insurance Company, supra at 13.
Under this reasoning the Court does not recognize the defendant's manifestation of intent directing the plaintiff to apply the January 30, 1997 rent installment payment to February 1997 rent as valid because the defendant had a duty to perform and enforce the lease agreement by not defaulting. 2 Restatement (Second)Contracts § 258 (1981), cmt. a. ("The obligor cannot, however, effectively direct an application in breach of a contract with the obligee as to how performances should be applied if the contract is specifically enforceable, . . . ."). Such payment application would indicate that the defendant in manifesting an intent to apply the January 30, 1997 rent installment payment to February 1997 rent, also manifested an intent to default the lease by not timely paying the overdue amounts in the notice of nonpayment. The conduct of, and communication between, the parties provides evidence that indicates the defendant had the intent to resolve the payment issues with plaintiff and to not default the lease. Moreover, if this Court had determined that the defendant did not manifest an intent to apply the January 30, 1997 rent installment payment to February 1997 rent installment, the Court will not recognize plaintiff's application of the payment as an effective manifestation of intent. The plaintiff was under a duty to perform and enforce the common purpose of the lease by applying defendant's payments to the overdue amounts listed in the notice of nonpayment. 2 Restatement (First) Contracts § 389 (1931). ("The creditor cannot apply the payment . . . to the exclusion of a claim, failure to discharge which will, as the creditor knows or has reason to know, cause a forfeiture, . . . ."); and 2 Restatement (Second) Contracts § 259 (1981). ("A creditor cannot apply such a payment to a debt if . . . a forfeiture would result from a failure to apply it to another debt and the creditor knows or has reason to know this, . . . . The creditor is also subject to the duty of good faith and fair dealing . . . ."). Therefore, the Court finds that neither party made a proper application of the January 30, 1997 payment of $16,325.00.
Where a debtor and creditor have both failed to exercise its power concerning the application of payments among several debts in a general account, this Court has authority to make the application with "just regard" to the interest of the debtor and creditor and to apply the payment to the "earliest matured debts and ratably among debts of the same maturity." 2 Restatement (First) Contracts §§ 387 and 394; and quoting 2 Restatement (Second) Contracts § 260 (1981); see also Lincoln StorageWarehouses v. Commissioner of Internal Revenue, 189 F.2d 337, 341, 50 T.C. P9394 (1950); and 60 Am.Jur.2d Payment § 117 (1987), which states:
 "Absent an agreement to the contrary, a payment on an obligation payable in installments is applicable to the installment first falling due . . . . (citing Smith v. Renz, 122 Cal.App.2d 535, 265 P.2d 160 (1954); Williams v. Cambridge Companies, Inc., 615 S.W.2d 172; 89 A.L.R.3d 947 (Tex. 1981)). But where the agreement calls for installments of flat amounts, a payment in excess of an installment has been held applicable to the next installments, and the debtor is not in default as long as his total payments equal the total amount of the installments due at that time. (citing Los Angeles Invest. Co. v. Wilson, 181 Cal. 616, 185 P. 853
(1919))." 60 Am.Jur.2d § 117, supra.
The evidence indicates that the plaintiff maintained a general running account itemizing all of defendant's rent and operating expense charges. The notice of nonpayment stated a total amount due of $26,108.29 including interest calculated to January 25, 1997. The defendant tendered to plaintiff payment totaling $35,325.11 prior to February 13, 1997. Under the good faith and fair dealing principles stated above, the plaintiff and defendant were under a duty to maintain the tenancy by applying the defendant's payments to the amounts due under the notice of nonpayment. The defendant tendered the February 1997 monthly rent installment payment on January 30, 1997. The lease calls for an annual rent payment paid in monthly installments. The February 1997 payment should have been applied against the general account deficiency and not segregated to the February 1997 rent installment payment. If there was a deficiency on February 1, 1997, the plaintiff, pursuant to the lease, should have issued a subsequent notice of nonpayment to include the February 1997 monthly rent installment shortfall. Moreover, the plaintiff was under an obligation to apply the payments first to amounts due under the notice of nonpayment before applying funds to amounts not yet due during the ten day cure period. The Court finds that the defendant was not in default of the lease when the plaintiff issued the notice of termination of February 14, 1997.
Although this Court's holding renders the parties' remaining arguments moot, the Court will briefly address each. The defendant argues that the notice of nonpayment and the notice of termination were ineffective because they were mailed to the wrong address as provided under the lease terms. The defendant relies on the March 26, 1996 letter mailed to CK Associates and argues that the plaintiff failed to comply with the express service provisions of Paragraph 28.1 of the lease. Furthermore, the defendant argues that it was prejudiced because the proper individuals who had authority to cure the default did not receive these notices in a timely manner due to delays from internal mail routing. The plaintiff argues that it provided proper written notice of the default as provided in Paragraph 24.1 of the lease, the defendant failed to cure the default within the required 10 days, and it properly issued a notice of termination pursuant to Paragraph 24.2 of the lease which expressly authorized the plaintiff to terminate the lease in the event of a default. However, the plaintiff makes no argument with respect to the service provisions of Paragraph 28.1 or to the March 26, 1996 letter upon which the defendant relies.
Paragraph 28.1 of the lease expressly provides for how and to whom notice service shall be made by the parties. However, the record indicates that the plaintiff mailed billing statements, and two notices of nonpayment in October 1996 and November 1996, addressed in a manner other than that stated in the March 26, 1996 letter. The record is absent of any indication that defendant notified plaintiff of the error or objected to this service as a breach of Paragraph 28.1 of the lease prior to February 1997. Therefore, this Court finds that the defendant waived its rights to enforce retrospectively the specific service requirements of the lease and that the plaintiff provided effective service of the notice of nonpayment. Alternatively, this Court finds that the plaintiff did not properly serve the notice of termination to the defendant pursuant to the lease. In the February 4, 1997 letter from Hernon to Simmons the defendant provided the plaintiff with written notice stating the names, titles, and addresses of the persons the plaintiff was to serve notice. Defendant's Exhibit CC. However, the plaintiff served the notice to terminate upon the general name and address of the defendant. Joint Exhibit I.
Although the notice of nonpayment was properly served upon the defendant, this notice was not effective because it contained erroneous amounts and amounts not yet due under the lease. These issues promoted the confusion between the parties and delays in performance as evidenced by subsequent communications concerning plaintiff's billing statement and interest calculation errors. The plaintiff had a duty to serve upon the defendant a proper notice of termination as a necessary condition precedent to the plaintiff's maintaining this action of trespass and ejectment under the terms of the lease. Abbenante v. Giampietro,75 R.I. 349, 66 A.2d 501 (1949); 49 Am.Jur.2d Landlord and Tenant § 303 (1995) (As a general rule, a demand for rent due, the nonpayment of which may constitute a default under the lease, must be the precise amount of rent due.). The evidence indicates the notice of nonpayment contained erroneous amounts for operating expenses and interest due, and a demand for expenses not yet due. This supports a finding that the notice of nonpayment was not proper. The erroneous amounts demanded and subsequent confusion and disagreement between the parties in rectifying these errors led to delays in the defendant's ability to cure the nonpayment.
Next, the defendant argues that the February 10, 1997 letter from plaintiff to defendant supports a finding that the plaintiff manifested an intent that the letter serve as a waiver of the alleged default under the lease. The letter states in relevant part that "[w]e look forward to receiving payment of the rental arrearage and other outstanding payments due. Once we have received all payments due, with interest to the date of payment, then Stop Shop's request for a refund or credit of such interest will be reviewed . . . ." The question of whether the plaintiff waived its rights to terminate is a question of intent that necessarily depends on the facts of the case. Cardi v.Ammoriggi Sea Foods, Inc., 468 A.2d 1233, 1234 (R.I. 1983), (citing Chertkof v. Southland Corp., 280 Md. 1, 6, 371 A.2d 124, 127 (1977)). The Court is not persuaded by the defendant's argument because the plaintiff mailed to defendant notice of nonwaiver certifications dated February 6, 1997 and February 11, 1997. Furthermore, the Court has determined that the ten day period in which to cure the default ended on February 13, 1997, not on February 10, 1997 as defendant argues for this part of its argument. Accordingly, this Court finds that the plaintiff did not waive its right to terminate the lease if defendant did not cure the default before the ten day cure period expired by making the above written statements to defendant subsequent to the notice of nonpayment.
Last, the defendant argues that pursuant to the lease, the defendant is entitled to recover reasonable attorneys' fees for defending this action. The lease states in relevant part:
 In the event of any litigation between the landlord and tenant to enforce any of the provisions of this Lease or any right of either party hereto, the unsuccessful party . . . agrees to pay the successful party all costs and expenses, including reasonable attorneys' fees, incurred therein by the successful party . . . ." Lease at Paragraph 28.7.
The lease expressly provides for the payment of attorney's fees by the unsuccessful party to this litigation. Pursuant to the lease between the parties, this Court rules that the defendant is awarded all costs, expenses, and reasonable attorneys' fees for defending this action.
Therefore, the plaintiffs appeal is denied and this Court affirms the decision of the Sixth Division District Court in favor of the defendant. Counsel shall submit the appropriate judgment for entry.